IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LORIE LAWRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-3312-CV-S-ODS-SSA |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born December 30, 1962, and has a high school education. She alleges disability beginning September 8, 2007[1], due to migraines, pain in her back and neck, and arthritis in her neck, back, and shoulders. A complete summary of the record is not necessary and the following will suffice for purposes of this appeal. The medical evidence shows that x-rays of Plaintiff's cervical spine showed minimal degenerative disc narrowing. R. 855. X-rays of her lumbar spine showed minimal degenerative sclerotic changes. R. 847. A physical exam showed decreased range of motion in her lumbar spine, and severe bilateral tenderness in her cervical spine. R. 869. Plaintiff

---

[1] In his decision, the ALJ cited the initial onset date of April 30, 2006. Plaintiff presents this as legal error for the first time her Reply Brief and contends a supplemental hearing on remand is required. The Court disagrees. Although the ALJ incorrectly cited the initial onset date, the amended onset date fell between the initial date and the last insured date. Plaintiff was not required to prove disability for the entire period as the ALJ could have rendered a partially favorable decision, which he did not. Thus, remand is not appropriate.

had normal strength and range in all her joints, and straight leg raises were positive. R. 870. Her gait was coordinated and smooth. R. 741.

Plaintiff was diagnosed with carpal tunnel syndrome and a nerve conduction study showed it was mild. R. 958. She had full range of motion in her wrists. R. 614. Plaintiff described tingling in her hands, but reported that she did not notice any weakness. R. 694. There is no evidence that any carpal tunnel surgery was recommended.

Plaintiff underwent a one-time mental status exam by Eva C. Wilson, Psy. D. Dr. Wilson opined that Plaintiff was "capable of understanding and remembering simple instructions but distractions from pain and depression would prevent her from sustaining concentration and persistence with tasks at this time." R. 787. Dr. Wilson also noted Plaintiff's results on a Minnesota Multiphase Inventory showed that Plaintiff was either exaggerating her problems or crying for help. R. 787. Plaintiff also saw William G. Myers, Psy. D., on one occasion who opined that "[given] the severity of [Plaintiff's] cognitive deficits, it is very unlikely she would be successful in an employment setting and be able to keep a job." R. 941.

The ALJ rendered his decision on July 24, 2012. R. 26. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since April 30, 2006. R. 16. At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia; headaches; bilateral carpal tunnel syndrome; insomnia; cervical and lumbar degenerative disc disease; and mental disorders variously described as cognitive disorder not otherwise specified, major depressive disorder with psychotic features, panic disorder without agoraphobia, chronic pain disorder, attention deficit disorder, borderline intellectual functioning and learning disorder not otherwise specified. R. 16. At step three, the ALJ concluded that Plaintiff did not have a listed impairment. R. 16. At step four and five, the ALJ concluded:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she cannot push or pull levers or foot pedals with the lower extremities bilaterally; bending, twisting, or turning whether seated or standing is limited to occasional; no crawling, kneeling, climbing of ropes ladders or scaffolds; stooping, squatting, crouching, crawling, stairs, are occasional; gripping and grasping wrist movements as well as handling and

2

fingering are frequent; no use of air or vibrating tools; no use of motor vehicles; no contact with the public, no more than occasional contact with supervisors or coworkers; she does not have the ability to carry out complex instructions, and she cannot respond appropriately to usual work situations or changes in a routine work setting in which there are complex instructions or complex tasks.

R. 19. Next, the ALJ found, based on the vocational expert's testimony, Plaintiff was unable to perform any past relevant work, but considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as mail room clerk, office helper, and routing clerk. R. 25-26. The ALJ concluded Plaintiff was not disabled at any time through December 21, 2011, the date last insured. R. 26.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. Plaintiff's Credibility

Plaintiff does not directly dispute the ALJ's credibility determination. However, she argues she was restricted by physical and mental limitations that precluded employability and primarily cites to her testimony for support. Thus, the Court views this as a credibility argument and finds it necessary to analyze whether the ALJ properly analyzed Plaintiff's credibility. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the

3

credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

In this case, there is substantial evidence on the record as a whole to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. First, the ALJ determined that the objective medical evidence of record did not support Plaintiff's allegations and the ALJ went into great detail discussing the inconsistencies. R. 19-21. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (holding that an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary"). For example, Plaintiff contends she has trouble standing and walking, but her gait was described as coordinated and smooth. R. 19, 614, 620, 622-26, 661, 695, 741, 773, 870. Plaintiff also complained of severe pain in her neck and back, but her x-rays were unremarkable or showed only minimal degenerative changes. R. 19, 523, 741, 744, 847, 851, 855. The ALJ also noted that although Plaintiff complained of daily headaches, a CT scan of her head was normal and there was no evidence she followed-up on any referrals to a neurologist for evaluation. R. 20, 523.

The ALJ also found Plaintiff's testimony not credible because she generally received conservative and routine treatment. R. 22. The ALJ considered Plaintiff's statement that she was unable to afford additional treatment, but the ALJ did not find this explanation persuasive, "as it appears that the claimant has not made any efforts to access lower cost medications, or community resources." R. 23. "An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003);

*see also Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (failure to seek regular treatment or obtain pain medication inconsistent with complaints of disabling pain).

Next, the ALJ found that Plaintiff's activities of daily living were inconsistent with her assertion of disability. R. 23. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). Plaintiff reported that she drives, shops in stores, prepares simple meals, and does laundry. R. 442-43. Plaintiff also reported that she owns two horses and enjoys spending time with them. R. 939. The ALJ stated "the fact that she owns horses, which are large animals that require near daily care, suggests that she is less limited than she alleges . . . ." R. 23.

Plaintiff also worked after her alleged onset date, which the ALJ properly found undermines Plaintiff's credibility. The record shows that Plaintiff reported working part time with average monthly earnings of $688 until September 2008. R. 325, 32, 334. The ALJ also noted that the "income does not appear to have been reported to the Internal Revenue Service, which raises another question as to the claimant's credibility in connection with this application." R. 23.

The ALJ also noted "claimant's generally unpersuasive appearance and demeanor while testifying at the hearing." R. 23. "The ALJ's personal observations of the claimant's demeanor during the hearing [are] completely proper in making credibility determinations." *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001). As the ALJ pointed out, this was only one observation among many relied upon in reaching a conclusion regarding Plaintiff's credibility.

Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision—particularly given that the primary responsibility for the assessment lies with the ALJ and not the Court. The ALJ is in the best position to determine a claimant's credibility, and thus this Court grants the ALJ deference in that regard. *See Johnson*, 240 F.3d at 1147. Accordingly, the Court concludes that there is substantial evidence on the Record as a whole to support the ALJ's credibility assessment.

B. RFC

Plaintiff also challenges a few aspects of the ALJ's RFC finding. Plaintiff argues the ALJ did not properly account for (1) Plaintiff's need to use a cane; (2) Plaintiff's limited ability to finger, grip, and feel with her hands; and (3) Plaintiff's difficulty sustaining concentration and persistence.

Plaintiff relies on her subjective statements about her need to use a cane for a year prior to the July 5, 2012 hearing. Pl's Br. at 11 (citing R. 59-60). However, there are no medical records indicating that Plaintiff was prescribed a cane during the relevant period. Further, the objective medical evidence describes Plaintiff's gait as coordinated and smooth, and normal strength in her extremities. R. 19, 614, 620, 622-26, 691, 741, 773, 870. There is no supporting evidence in the Record showing that a cane was medically necessary.

Next, Plaintiff contends the ALJ erred by not accounting for her limited ability to finger, grip, and feel with her hands. Pl's Br. at 11-12. Again, Plaintiff relies on her own testimony that she had reduced strength in her arms and hands, dropped items, and could write with a pen or pencil for only seven minutes. *Id.* (citing R. 61, 120). The ALJ addressed Plaintiff's allegations of carpal tunnel syndrome in great detail. R. 20. He noted that a nerve conduction study showed that her condition was mild, she had full range of motion in her wrists, her handgrip was equal, she rarely complained of numbness or symptoms in her fingers, no carpal tunnel surgery was recommended. R. 20. Thus, the ALJ properly addressed Plaintiff's allegations of her limited ability to finger, grip, and feel with her hands.

Finally, Plaintiff contends the ALJ should have found that she was unable to sustain concentration and persistence to maintain employment. Plaintiff relies upon the opinions of Dr. Wilson and Dr. Myers, two consultative examiners. However, the ALJ properly assigned little weight to those opinions. R. 24. Dr. Wilson opined that Plaintiff "is capable of understanding and remembering simple instructions but distractions from pain and depression would prevent her from sustaining concentrating and persistence with any tasks at this time." R. 787. First, the ALJ noted Dr. Wilson's opinion suggested that Plaintiff's difficulties were transitory as it contains the caveat that Plaintiff could not sustain concentration and persistence "at this time." R. 21. The ALJ gave

good reasons for assigning little weight to Dr. Wilson's opinion. She failed to consider whether Plaintiff was exaggerating on her mental status exam, despite the fact that exaggeration was shown on her personality inventory. The ALJ noted this as a reason to call into question Dr. Wilson's opinion regarding Plaintiff's inability to sustain concentration and persistence. Dr. Wilson's opinion was also inconsistent with Plaintiff's routine and conservative treatment and the lack of observations by her health care providers showing that Plaintiff experienced significant difficulties with memory or concentration. R. 24. Further, Dr. Wilson only examined Plaintiff on one occasion. These are all good reasons to assign little weight to Dr. Wilson's opinion.

Dr. Meyers opined that Plaintiff was severely impaired in the areas of immediate memory, attention, and delayed memory. R. 262. Dr. Meyers opined, "Given the severity [of Plaintiff's] cognitive deficits, it is very unlikely she would be successful in an employment setting and be able to keep a job." R. 262. The ALJ properly gave little weight to Dr. Meyers' conclusion that Plaintiff could not work because it addressed the ultimate issue of disability, which is reserved to the Commissioner. R. 24. *See Davidson v. Astrue,* 578 F.3d 838, 842 (8th Cir. 2009). The ALJ also noted that Dr. Meyers only examined Plaintiff on one occasion and his opinion was inconsistent with Plaintiff's conservative treatment and lack of observations by treating health care providers showing significant difficulty in memory or concentration. R. 24. There is substantial evidence in the Record as a whole to support the ALJ's RFC determination.

## IV. CONCLUSION

There is substantial evidence on the record as a whole to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: May 21, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT